UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                      :

NEWMAN CAPITAL LLC,               :

                                        :

                      Plaintiff,     :

                                        :                 22-CV-663 (VSB)

             - against -          :

                                        :       **<u>AMENDED OPINION & ORDER</u>**[1]

                                        :

PRIVATE CAPITAL GROUP, INC.;     :
SELECT FUND MANAGEMENT LLC;   :
JARED LUCERO; MICHAEL BURKE;    :
REEF CAPITAL PARTNERS LLC;      :
COMMON INVESTMENT FUND LLC;   :
REEF-PCG LLC; STILLWATER EQUITY  :
PARTNERS LLC; REEF CAPITAL       :
INVESTMENT LLC; REEF CAPITAL     :
MANAGEMENT LLC; REEF INVESTMENT :
MANAGEMENT LLC; CANYON        :
ACCOUNTING LLC; PCG SELECT SERIES :
I LLC; PCG SELECT SERIES II LLC; PCG :
SELECT SERIES SECURED LLC; PCG    :
SELECT SERIES OFFSHORE I LP; SFM   :
CREDIT FUND OFFSHORE I LP; SFM    :
SECURED CREDIT II LLC; and RIM     :
SECURED CREDIT INCOME FUND III   :
LLC,                                  :
                            Defendants,   :
                                        :

       and                       :

                                        :

PCG CREDIT PARTNERS LLC; PCG    :
HOLDINGS LLC; 160 W CANYON CREST :
ROAD LLC; 1705 VIEWPOINT LLC;    :
OUTLAW COUNTRY HOLDING LLC;   :
IRON FOX BALLARD LLC; BROOKSIDE :

---

[1] On March 28, 2024, I filed an Opinion & Order in this case granting in part and denying in part Defendants' motions to dismiss and dismissing certain defendants for lack of jurisdiction and for failure to state a claim. (Doc. 40.) On April 11, 2024, counsel to Defendants filed a letter noting a discrepancy between my Opinion & Order dismissing certain defendants and the docket entry's text setting an answer deadline for those defendants. (Doc. 41.) As set forth in the Conclusion, I enter this Amended Opinion & Order to clarify which defendants have been dismissed from this action. These clarifications and corrections do not otherwise modify the conclusion of my original Opinion & Order. This Amended Opinion & Order will be filed with an accompanying Order directing the remaining Defendants to file an amended answer.

PRAIRIE VIEW LLC,                          :
                                           :
                           Nominal         :
                           Defendants.     :
-------------------------------------------------------- X

Appearances:

Michael Terrance Conway
Lazare Potter Giacovas & Moyle LLP
New York, NY

Stephen Michael Forte
Offit Kurman, P.A.
New York, NY
*Counsel for Plaintiff*

Jarome R. Jones
Jeremy C. Reutzel
Bennett Tueller Johnson & Deere
Salt Lake City, Utah

David Joseph Mahoney
Silverman Acampora L.L.P.
Jericho, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Before me are two motions to dismiss the Amended Complaint, or in the alternative, for

summary judgment filed by Defendant Private Capital Group ("Private Capital"), (Doc. 12), and

Defendants Jared Lucero ("Lucero"), PCG Select Series I LLC, PCG Select Series II LLC, PCG

Select Series Secured LLC, Reef Capital Partners LLC, Select Fund Management LLC ("SFM"),

SFM Secured Credit II LLC, Reef Investment Management LLC, RIM Secured Credit Income

Fund III LLC, PCG Credit Partners LLC, 1705 Viewpoint LLC, Iron Fox Ballard LLC, SFM

Credit Fund Offshore I LP, Reef-PCG LLC, Stillwater Equity Partners LLC, Michael Burke

("Burke"), Common Investment Fund LLC, Reef Capital Investment LLC, Reef Capital

Management LLC, Canyon Accounting LLC, PCG Holdings LLC, 160 W Canyon Crest Road

LLC, Outlaw Country Holding LLC, and Brookside Prairie View LLC (collectively, the "New Defendants" and together with Private Capital, "Defendants").  (Doc. 26; *see also* Docs. 35, 39.) Because the Amended Complaint contains sufficient factual allegations to plausibly allege breach of contract, Defendants' motions to dismiss as to this claim are DENIED.  However, because the Amended Complaint fails to state a claim for unjust enrichment and intentional interference with contractual relations, and because Plaintiff's fraudulent conveyance claim is untimely, Defendants' motions to dismiss these claims are GRANTED, and the claims are DISMISSED without prejudice to filing a second amended complaint.

## I.    <u>Factual Background</u>[2]

Plaintiff is a New Jersey LLC based out of New York City that provides financial advisory and investment banking services to early-stage companies.  (Am. Compl. ¶ 7.)  Plaintiff raises capital for its clients by connecting them with high-net-worth individual investors, hedge funds, family offices, private equity firms, venture capital firms, among other sources.  (*Id.* ¶ 43.) Plaintiff maintains a record of the connections it makes so that even if an investor is not initially interested, if that investor later closes an investment within the lifetime of the relevant agreement, Plaintiff receives a portion of the investment as an investment banker fee.  (*Id.* ¶ 45.)

Private Capital is a Utah-based private real estate lending company that used Plaintiff's services to meet accredited investors.  (*Id.* ¶ 2.)  SFM is a Utah-based Delaware limited liability company created by Private Capital as a spin-off company.  (*Id.* ¶ 9.)  Lucero and Burke, (together the "Individual Defendants"), are Utah residents who control all of the Defendant

---

[2] The facts contained in this section are based upon the factual allegations set forth in the Amended Complaint filed by plaintiff Newman Capital ("Plaintiff").  (Doc. 5-5, "Am. Compl.")  I assume the allegations in the Complaint to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

companies.  (*Id.* ¶¶ 10–11.)

Reef Capital Partners, Common Investment Fund, Reef-PCG, Stillwater, Reef Capital Investment, Reef Capital Management, Reef Investment Management, Canyon Accounting, PCG Series I, PCG Offshore, SFM Offshore, SFM II, and RIM Secured III, (together the "Known Affiliates"), are alleged alter egos of Private Capital.[3]  (*Id.* ¶¶ 34, 37.)  PCG Credit Partners, PCG Holdings, 160 W Canyon Crest Road, 1705 Viewpoint, Outlaw Country Holding, Iron Fox Ballard, and Brookside Prairie View, (the "Nominal Defendants," together with the Known Affiliates, Private Capital, and SFM, the "Corporate Defendants"), "were each owned in whole or in part by" Private Capital.  (*Id.* ¶ 35.)

In 2012, Defendants needed access to capital and were referred to Plaintiff.  (*Id.* ¶ 48.) Between May 2013 and March 2018, the parties executed eight agreements related to their plan for Plaintiff to introduce Defendants to potential investors.  (*Id.* ¶¶ 49–50.)  The first of these agreements was a Non-Disclosure and Non-Circumvention Agreement between Plaintiff and "Jared L. Lucero of Private Capital Group, Inc. and its affiliates, associates, subsidiaries, employees, officers, directors, and assigns."  (*Id.* ¶ 51, the "2013 NDNCA.")  On October 8, 2013, the parties entered into an Advisory Fee Agreement that gave Plaintiff the non-exclusive right to introduce Private Capital to potential investors for 24 months.  (*Id.* ¶¶ 56, 60, the "2013 AFA) (together with the 2013 NDNCA, the "2013 Agreements").  The 2013 AFA also gave Plaintiff the right to be present at meetings and calls with the investors it introduced to Defendants and to receive a fee if an introduction resulted in an investment within a five-year period following the 2013 AFA's expiration.  (*Id.* ¶¶ 61–65.)

---

[3] The Amended Complaint does not include any factual allegations as to PCG Series II and PCG Secured, accordingly they are dismissed as Defendants.

On October 23, 2013, Plaintiff shared the opportunity to invest in Private Capital with a company called Crestline.  (*Id.* ¶ 69.)  On February 28, 2014, Plaintiff introduced Private Capital and Lucero to Crestline's executive team.  (*Id.* ¶ 71.)  After the meeting, Crestline expressed interest in investing about $30 to 40 million in Private Capital, began performing due diligence, and eight months later signed a term sheet.  (*Id.* ¶¶ 72–73.)  Because Plaintiff is not a member firm of the Financial Industry Regulatory Authority ("FINRA") or the Securities and Exchange Commission ("SEC") and may not close securities transactions without the assistance of a FINRA and SEC registered broker/dealer, Plaintiff assigned the 2013 AFA to a company called WaveCrest Securities LLC ("WaveCrest").  (*Id.* ¶¶ 46, 47.)  Crestline ultimately closed on the first of several investments in December 2014 for $40 million.  (*Id.* ¶ 76.)  The 2013 AFA was later reassigned by WaveCrest to Plaintiff in 2018.  (*Id.* ¶ 75.)

On September 23, 2014, Plaintiff and Private Capital entered into another Non-Disclosure and Non-Circumvention Agreement (the "2014 NDNCA") and an Engagement Agreement (the "2014 EA") (the "2014 Agreements, and together with the 2013 Agreements, the "Earlier Agreements").  (*Id.* ¶ 77.)  Unlike the 2013 Agreements, the 2014 Agreements provided WaveCrest with an "exclusive" right to introduce prospective investors to Private Capital for six months, followed by a "non-exclusive" right for the following twelve months.  (*Id.* ¶ 81.)  Otherwise, the 2013 and 2014 Agreements were almost identical, including the inclusion of a five-year tail period and New York choice of law provision.  (*Id.* ¶¶ 82–83.)  As with the 2013 Agreements, the 2014 Agreements were reassigned by WaveCrest to Plaintiff in 2018.  (*Id.* ¶ 79.)

From the time that Plaintiff introduced Crestline to Private Capital through September 2016, Private Capital closed three rounds of investment funding with Crestline for a total of $100

million.  (*Id.* ¶ 86.)  Defendants did not inform Plaintiff of these transactions or any of their related communications with Crestline following their initial meeting.  (*Id.* ¶¶ 85–86.)  Rather than pay Plaintiff their agreed-upon fees, Private Capital transferred their assets and the Crestline opportunities to other affiliated companies.  (*Id.* ¶ 91.)

On January 23, 2017, SFM and WaveCrest entered into a Non-Disclosure and Non-Circumvention Agreement (the "2017 NDNCA") and an Engagement Agreement (the "2017 EA") (the "2017 Agreements").  (*Id.* ¶ 111.)  The 2017 Agreements were similar to the 2013 and 2014 Agreements, except that the 2017 EA:  (1) provided WaveCrest with a non-exclusive right to introduce SFM to prospective investors for 24 months; (2) provided a dual fee structure for Plaintiff; and (3) included a list of the 133 prospective investors that Plaintiff had already introduced to Private Capital.  (*Id.* ¶¶ 114–118.)  The 2017 Agreements were reassigned from WaveCrest to Plaintiff in 2018.  (*Id.* ¶ 113.)

On March 6, 2018, SFM and Plaintiff entered into a Non-Disclosure and Non-Circumvention Agreement (the "2018 NDNCA") and an Advisory Fee Agreement (the "2018 AFA.") (the "2018 Agreements" and together with the 2017 Agreements, the "Later Agreements").  (*Id.* ¶ 122.)  The 2018 Agreements were between Plaintiff and SFM because Plaintiff had severed ties with WaveCrest.  (*Id.* ¶ 124.)  The 2018 Agreements were similar to the 2017 Agreements, except the 2018 Agreements:  (1) included a longer list of prospective investors that Plaintiff introduced to SFM; (2) provided that Plaintiff is entitled to notice of "any and all communication, including but not limited to meetings, conference calls, emails, text messages or instant messages between [SFM] and Accredited Investors introduced by [Plaintiff]"; and (3) allowed Plaintiff "to see any and all communication, including but not limited to emails, text messages or instant messages between SFM and Accredited Investors

introduced by [Plaintiff]."  (*Id.* ¶¶ 126–130.)

## II.   <u>**Procedural History**</u>

Plaintiff filed his initial complaint on October 7, 2019, (Doc. 5-1), before Judge Melissa

Crane in the Supreme Court of the State of New York.  On January 6, 2022, Plaintiff filed the

Amended Complaint.  (Doc. 5-5, "Am. Compl."[4].)  On January 25, 2022, this case was removed

from state court to the Southern District of New York, and assigned to me.  (Doc. 1.)

On February 1, 2022, Private Capital filed its motion to dismiss, or in the alternative for

summary judgment, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, as well as an

accompanying memorandum of law and exhibits.  (Docs. 12–14.)  On February 15, 2022, New

Defendants filed their motion to dismiss, or in the alternative, for summary judgment pursuant to

Rules 7, 12(b)(2), 12(b)(6), and 56, as well as an accompanying memorandum of law and

exhibits.  (Docs. 26–27.)  On February 15, 2022, Plaintiff filed its memorandum in opposition to

Private Capital's motion, (Doc. 29), as well as accompanying declarations and exhibits.  (Docs.

30–31.)  On March 1, 2022, Plaintiff filed its memorandum in opposition to the New

Defendants' motion, which also attached declarations and exhibits.  (Doc. 37.)  Private Capital

filed its reply on February 22, (Doc. 33), and the New Defendants filed their reply on March 8,

2022, (Doc. 38).

On February 22, 2022, Defendants Reef-PCG LLC, Stillwater Equity Partners LLC,

Michael Burke, Common Investment Fund LLC, Reef Capital Investment LLC, Reef Capital

Management LLC, Canyon Accounting LLC, PCG Holdings LLC, 160 W Canyon Crest Road

LLC, Outlaw Country Holding LLC, and Brookside Prairie View LLC joined the New

---

[4] Doc-5-5 includes the Amended Complaint as well as a compilation of separate, non-consecutively paginated, documents.  Citations to the Amended Complaint are to paragraph numbers ("Am. Compl. ¶ __").  Citations to the remainder of the document (*i.e.*, pp. 29–73) refer to the ECF stamp page numbers ("Doc. 5-5 at __").

Defendants' motion to dismiss.  (Doc. 35.)  On March 23, 2022, Defendants 1705 Viewpoint

LLC, Iron Fox Ballard LLC, and SFM Credit Fund Offshore I LP joined the New Defendants'

motion to dismiss.  (Doc. 39.)

### III.   <u>Legal Standard</u>

#### A.  *Rule 12(b)(2)*

"[A] federal court generally may not rule on the merits of a case without first determining

that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the

parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp*., 549 U.S. 422,

430–31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93–102 (1998)).  On a

motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the "plaintiff bears

the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks

to bring suit."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In*

*re Magnetic Audiotape Antitrust Litig*., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)); *see also*

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "'varies depending

on the procedural posture of the litigation.'"  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722

F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194,

197 (2d Cir. 1990)).  At the pleading stage, a plaintiff need only make a prima facie showing that

jurisdiction exists, and that showing may be established solely by allegations.  *Id*. at 84–85; *see*

*also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("In order to

survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie

showing that jurisdiction exists." (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,

732 F.3d 161, 167–68 (2d Cir. 2013))).

Courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc*., 286 F.3d 81, 84 (2d Cir. 2001). If the court considers pleadings and affidavits submitted by the parties, the plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11*, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). If the parties present conflicting affidavits, however, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking*, 989 F.2d at 580 (internal quotation marks omitted).

Finally, where a plaintiff fails to a make a prima facie case of personal jurisdiction, particularly where the jurisdictional allegations are simply insufficiently developed rather than insufficiently specific, a district court has broad discretion to permit jurisdictional discovery rather than dismissing the claim outright. *See Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 417 (S.D.N.Y. 2009) (citing *Tex. Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 739 (2d Cir. 2002)).

### B. *Rule 12(b)(6)*

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *See Kassner*, 496 F.3d at 237 (2d Cir. 2007).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* at 678.  A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

### C. *Rule 56*

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," and to present such evidence that would allow a jury to find in his favor. *Id.* at 256 (citation omitted).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, I must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citations and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). "[A] plaintiff must provide more than conclusory allegations to resist a motion for summary

judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  The ultimate inquiry is "whether the evidence can reasonably support a verdict in plaintiff's favor."  *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

### IV.   <u>Discussion</u>

#### A.  *Summary Judgment*

Defendants seek dismissal or, in the alternative, summary judgment as to each of Plaintiff's claims.  At the outset, I agree with Plaintiff that Defendants' motions for summary judgment are premature.  Although under Rule 56(b), motions for summary judgment may be filed at any time until 30 days after the close of discovery, "courts disfavor summary judgment motions made prior to the completion of discovery."  *United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 139 n.21 (S.D.N.Y. 2015).  The parties have not yet had a "fully adequate opportunity for discovery" related to their disputes.  *Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F. 2d 506, 511 (2d Cir. 1989).  Accordingly, I find that it would be premature to consider Defendants' motions for summary judgment.

#### B.  *Personal Jurisdiction*

The New Defendants argue that Plaintiff has not established personal jurisdiction over them.  (Doc. 27 at 4–10.)  Plaintiff opposes the New Defendants' argument concerning a lack of personal jurisdiction, arguing that jurisdiction exists because "(i) Lucero and Burke . . . and other officers/directors of the Defendants have repeatedly engaged in business in the State of New York to meet with Newman Capital and its contacts; (ii) Lucero and Burke have used each the other Defendants . . . as their alter egos to do their bidding and to avoid contractually owed fees to Newman Capital; (iii) the consent to New York jurisdiction over PCG and SFM set forth in the eight agreements annexed to the Amended Complaint extends to the remaining Defendants as

its owners or closely related successors or assignees; and (iv) the Corporate Defendants themselves have transacted business in New York and/or are residents of New York through their owners."  (Doc. 37 at 4.)

> Personal jurisdiction exists under New York's Long Arm Statute if the party
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

N.Y. CPLR § 302(a).

### 1.  The Individual Defendants

Plaintiff sufficiently pleads personal jurisdiction as to the Individual Defendants.

Plaintiff alleges that Jared Lucero and Michael Burke conducted business in Manhattan on behalf

of Private Capital.  (Doc. 37-1 ¶¶ 9–11, 18; Am. Compl. ¶ 40.)  Specifically, they "traveled to

New York for the purposes of meeting with Newman Capital" and "have traveled to New York,

New York more than 15 times including to meet potential investors."  (Am. Compl. ¶ 40.)  These

meetings were related to the contracts at issue in this lawsuit; therefore, there is "some

articulable nexus between the business transacted and the cause of action sued upon."  *Sole*

*Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (internal

quotation marks omitted).  Accordingly, jurisdiction over the Individual Defendants is proper

pursuant to N.Y. CPLR § 302(a)(1).

### 2.  SFM

The 2018 AFA between Plaintiff and SFM provides that "[a]ny legal action arising out,

or relating to, this agreement and/or any amendment thereto shall be instituted in the state or

federal courts sitting in the Borough of Manhattan, State of New York.  The parties hereto agree

to the exercise of exclusive *in personam* jurisdiction over them by the state or federal courts in

New York having subject matter jurisdiction."  (Doc. 5-5 at 63–64.)  It is well settled that

"[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual

agreements."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).  Although SFM

contests the exercise of personal jurisdiction in its motion joining the New Defendants motion to

dismiss, (*see* Doc. 39 at 2), it does not specifically address, let alone challenge, the applicability

of this provision in the 2018 AFA.  Accordingly, jurisdiction is proper as to SFM.[5]

---

[5] Personal jurisdiction is also established as to SFM because SFM is an alter ego of Private Capital and the

### 3.  Known Affiliates

Personal jurisdiction is also established over the Known Affiliates because Plaintiff sufficiently pleads that they are alter-egos of Private Capital and the Individual Defendants. Plaintiff asserts, and Private Capital does not dispute, that jurisdiction over Private Capital is proper because "the parties' contractual relationship arises from a February 14, 2012, meeting between the representation of [Plaintiff] and [Private Capital] in New York, New York" and "representatives of those companies have traveled to New York, New York more than 15 times" since Private Capital began contracting with Plaintiff.  (Am. Compl. ¶ 40.)

The Second Circuit has observed that it is "well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process."  *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).  In addition, "the crux of the alter-ego theory of personal jurisdiction is that courts are to look for two entities acting as one an inquiry that we have compared to piercing the corporate veil."  *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 274–75 (2d Cir. 2023) (internal quotation marks, alterations, and citations omitted).

The parties disagree as to whether New York law, as Plaintiff argues, (Doc. 37 at 14–15), or Utah and Delaware law, as the New Defendants argue, (Doc. 38 at 6), governs when considering an alter ego theory of jurisdiction.  When subject matter jurisdiction exists because a claim raises a federal question, the "Second Circuit has yet to address whether to apply the law of the subsidiary's state of incorporation, federal common law, or the law of the forum" in assessing whether alter ego liability exists.  *CesFin Ventures LLC v. Al Ghaith Holding Co. PJSC*, No. 21-CV-1395 (PGG)(SDA), 2022 WL 18859076, at *4 (S.D.N.Y. Dec. 10, 2022) (internal quotation marks omitted).  However, in a diversity action, such as this one, "[courts]

---

Individual Defendants.  *See* Section IV.B.3.

apply the choice of law rules of the forum state—in this case New York—to determine what law governs alter ego or piercing the corporate veil analysis." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). Thus, because this is a diversity action, I will apply the choice of law rules of New York.

"Under New York choice-of-law rules, the law of the state of incorporation is used to determine whether the corporate veil should be pierced." *In re Hoosick Falls PFOA Cases*, 431 F. Supp. 3d 69, 79 (N.D.N.Y. 2020) (internal quotation marks omitted); *see Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) ("[U]nder New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded." (internal quotation marks and alterations omitted)). The Known Affiliates are all either Utah or Delaware corporations. (Am. Compl. ¶¶ 12–26.) Under both Utah and Delaware law, courts determine whether to pierce the veil by considering (1) whether the entities operated as a single economic unit, and (2) whether the manner of doing business has caused injustice or unfairness. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (applying Delaware law); *Envirotech Corp. v. Callahan*, 872 P.2d 487, 500 (Utah Ct. App. 1994). Factors considered under both Delaware and Utah law include whether the entity: (1) was sufficiently capitalized; (2) was solvent; (3) observed corporate formalities; (4) siphoned corporate funds; (5) had functioning officers and directors; (6) had corporate records; (7) paid dividends; (8) or was used as a façade for the dominant stockholder(s). *NetJets*, 537 F.3d at 177; *Lodges at Bear Hollow Condo. Homeowners Ass'n, Inc. v. Bear Hollow Restoration, LLC*, 344 P.3d 145, 150. No single factor is sufficient or controlling and the entities must have "operated as a single economic entity such that it would be inequitable . . . to uphold a legal distinction between them." *NetJets*, 537 F.3d at 177.

Under both Utah and Delaware law, Plaintiff's allegations are sufficient at this stage to plead that the Known Affiliates—and SFM—are alter egos of Private Capital and the Individual Defendants.  In the Amended Complaint, Plaintiff alleges that instead of paying fees owed to Plaintiff, "Defendants engaged in a complex scheme to transfer . . . [Private Capital's] assets to the Known Affiliates."  (Am. Compl. ¶ 91.)  Plaintiff pleads that "the corporate purposes and business activities of the Known Affiliates are substantially the same as [Private Capital], and these Known Affiliates have common ownership and/or management with [Private Capital]." (*Id.* ¶ 166.)  SFM is one of many entities created "for the purpose of receiving benefits from the Crestline funded loans which would have otherwise flowed to PCG."  (*Id.* ¶ 95.)  Plaintiff describes how and when the Individual Defendants created the Known Affiliates and transferred assets between them for no consideration.  (*Id.* ¶¶ 98–109.)  The Individual Defendants maintained control of the assets before and after transfers were made, and continued making these transfers until Private Capital became insolvent.  (*Id.*)  For example, Private Capital owned PCG Holdings until it was transferred to PCG Series I for no consideration.  (*Id.* ¶ 94.)  PCG Holdings was the sole owner PCG Credit Partners, which received investments from Crestline. (*Id.*  ¶¶ 92–93.)  Of the various entities, at least SFM and Private Capital operate out of the same address, "160 West Canyon Crest Road," and that address is also the name of one of the Nominal Defendants—160 W Canyon Crest Road LLC.  (*See* Doc. 5-5 at 35, 65.)

Another of the Known Affiliates, Reef-PCG, operated under the name "PCG" (an acronym for Private Capital Management) for a period of time.  (*Id.* ¶ 101.)  In May 2016, Burke and Lucero explicitly discussed how when "Steve's lawsuit" is dismissed, they will move forward with setting up a new entity and transferring assets from Private Capital to "Stillwater or reef investments."  (*Id.* ¶ 97.)

Plaintiff described a complicated web of entities that do not observe corporate formalities, intermingle funds, have significant overlap in ownership, and share property. Therefore, Plaintiff has sufficiently alleged that most of the Known Affiliates and SFM are alter egos of Private Capital and the Individual Defendants. However, because the allegations in the Amended Complaint fail to establish personal jurisdiction over two of the Known Affiliates— PCG Select Series II LLC and PCG Select Series Secured LLC—they must be dismissed as defendants.

### 4. Nominal Defendants

As to the Nominal Defendants, all of which are also either Utah or Delaware corporations, (*see* Am. Compl. ¶¶ 27–33), Plaintiff asserts that these parties were named "for the purpose of including them in any injunctive relief that the Court may order prior to, after, or as part of any judgment herein." (*Id*. ¶ 35.) Although the Amended Complaint requests a judgment "enjoining further transfers," (*see id*.¶ 169), other than explaining that the Nominal Defendants "were each owned in whole or in part by" Private Capital and exchanged among the Known Affiliates, Plaintiff does not otherwise explain how these entities are alter egos of any of the other Defendants. Accordingly, personal jurisdiction has not been established over the Nominal Defendants and they must be dismissed as defendants.

### C. *Permission to Join Defendants*

The New Defendants assert that "Newman Capital never obtained Private Capital's consent, or the state court's permission, to join the following fourteen additional defendants, which include some of the New Defendants: Michael Burke, Common Investment Fund LLC, Reef Capital Investment LLC, Reef Capital Management LLC, Reef Investment Management LLC, Canyon Accounting LLC, RIM Secured Credit Income Fund III LLC, PCG Credit Partners

LLC, PCG Holdings LLC, 160 W Canyon Crest Road LLC, 1705 Viewpoint LLC, Outlaw

Country Holding LLC, Iron Fox Ballard LLC, and Brookside Prairie View LLC." (Doc. 27 at

25.) The New Defendants explain that when Plaintiff filed its motion to file an amended

complaint in State Court, the attached draft complaint did not name these entities, referred to as

the "Unauthorized Defendants," as defendants. (*Id.*) The New Defendants assert that Judge

Crane allowed Plaintiff to add only "the new parties" identified on the complaint that Plaintiff

attached to its motion, which did not include the Unauthorized Defendants that Plaintiff

subsequently added when it ultimately filed the Amended Complaint. (*Id.*) Plaintiff explains

that the addition of the Unauthorized Defendants was permitted by Judge Crane because it was

"necessary to better plead its causes of action, particularly the fraudulent transfer claim." (Doc.

37 at 31.)

 The record does not definitively indicate whether Judge Crane intended for, or would

have permitted, Plaintiff to name additional defendants. However, the case is now pending

before me in federal court, and, in general, leave to amend should be freely given "when justice

so requires." Fed. R. Civ. P. 15(a)(2). This leave includes amendments made to name additional

parties. Although leave to amend may be denied for "undue delay, bad faith or dilatory motive

on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or]

futility of amendment, etc.," *Ruotolo v. N.Y.C.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting

*Foman v. Davis*, 371 U.S. 178, 182, (1962)), none of those factors are present here.

Accordingly, New Defendants' request to dismiss all claims against the Unauthorized

Defendants is DENIED.

### D.  *Settlement Agreement*

Private Capital argues that Plaintiff released its claims against them when the parties executed a settlement agreement (the "Settlement Agreement"), which was annexed to Private Capital's brief.  (Doc. 13 at 11; Doc. 14-10.)  Although the Settlement Agreement was not attached to the Amended Complaint, Private Capital asserts, and Plaintiff does not contest, that I may consider it because it was "reference[d]" in the Amended Complaint.  (*Id*.)  When determining the sufficiency of a claim under Rule 12(b)(6), the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers*, 282 F.3d at 152 (internal quotation marks omitted).  Even if a document is not incorporated by reference, I "may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  *Id*. (internal quotation marks omitted).  Here, I find that I may consider the Settlement Agreement in considering Private Capital's motion to dismiss because the document is both incorporated by reference and "integral to the complaint."  *Id.* (internal quotation marks omitted); *see also United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).  For example, in referencing the reassignment of the 2013 and 2014 Agreements from WaveCrest to Newman Capital in 2018, (Am. Compl. ¶¶ 75, 79, 113, 125), a transfer that was effectuated by the Settlement Agreement, Plaintiff incorporates that document by reference.  Moreover, according to Plaintiff, "[t]he purpose of the Settlement Agreement was to allow WaveCrest to exit the relationship with a percentage share of the commissions then due," which would necessarily have to be deducted from the percentage of any commission owed to Plaintiff in damages.  (Doc. 29 at 9.)

Having reviewed the Settlement Agreement, I reject Private Capital's assertion that they

are entitled to dismissal pursuant to the Settlement Agreement.  On November 27, 2018, WaveCrest, Private Capital, Newman Capital, and Stephen Newman entered into the Settlement Agreement.  (Doc. 14-10.)  The Settlement Agreement relates to "an amount unpaid" by Private Capital to WaveCrest referred to as the "Remaining Commission."  (*Id.* at 2.)  The Remaining Commission is broken into two parts:  the "Newman Fee," which is "ninety percent . . . of the Remaining Commission" and the WaveCrest Fee, which is "the remaining ten percent . . . portion" of the Remaining Commission.  (*Id.*)  As noted, the Settlement Agreement states that "[t]he Parties have agreed to resolve their dispute over the WaveCrest Fee (and only the WaveCrest Fee, for the avoidance of doubt)."  (*Id.*)  Pursuant to the Settlement Agreement, Plaintiff released Private Capital from "any and all actions . . . whether direct or derivative and whether known or unknown . . . arising out of any loans by Crestline to [Private Capital] through [November 27, 2018], but specifically excepting . . . any and all claims or actions arising from the Newman Fee."  (*Id.*)  Accordingly, the Settlement Agreement does not release Defendants from any of the claims raised in the Amended Complaint, which all relate to the Newman Fee, as opposed to the WaveCrest Fee.

### E.  *Breach of Contract*

#### 1.  **Private Capital**

Plaintiff's first cause of action alleges that Private Capital, SFM, and the PCG Assignees[6] are liable for breach of contract.  (Am. Comp. ¶¶ 134–144.)  Private Capital asserts that "because the Later Agreements expressly 'supersede' all prior agreements . . . Newman Capital's rights under the Earlier Agreements are extinguished" and the breach of contract claim should be

---

[6] The Amended Complaint defines "PCG Assignees" as including but "not necessarily limited to, Reef Capital Partners, Common Interest Fund, Reef-PCG, Stillwater, Reef Capital Investment and Reef Capital Management." (Am. Comp. ¶ 137.)

dismissed.  (Doc. 13 at 13–15.)  Plaintiff argues that this is "not supported on the face of the 2017 Agreements and 2018 Agreements, neither of which make reference to the earlier agreements or how liabilities already incurred by [Private Capital] with respect to these agreements were to be resolved."  (Doc. 29 at 14.)

Although Private Capital is correct that the 2017 EA and the 2018 AFA include a standard merger or "entire agreement" clause "supersed[ing] all prior or contemporaneous agreements," (*see* Doc. 5-5 at 49 ¶ 9, 64 ¶ 9), I agree with Plaintiff that this clause neither specifically reference any earlier agreements nor constitutes an unambiguous release of Private Capital's obligations to Newman Capital.  "A merger clause is a provision of a contract signifying that the contract is a complete statement of the parties' agreement, superseding any prior oral or written terms.  In other words, a merger clause operates to limit the universe of the parties' contractual obligations to the text of the contract itself."  *FIH, LLC v. Found. Cap. Partners LLC*, 920 F.3d 134, 143 (2d Cir. 2019).

The 2017 EA, dated January 23, 2017, was between WaveCrest and SFM.  (Doc. 5-5 at 49, ¶ 9.)  The 2018 Agreement, dated March 6, 2018, was between Newman Capital and SFM. (Doc. 5-5 at 64, ¶ 9.)  As stated above, the Settlement Agreement's reassignment of the 2017 Agreements from WaveCrest to Newman Capital resulted in a resolution as to the WaveCrest Fee.  (Doc. 14-10 ¶ 2.)  As for the 2018 Agreements between Newman Capital and Private Capital, Private Capital cites no caselaw whatsoever to support its argument that the standard merger clause "extinguished" Newman Capital's rights, particularly in light of the Settlement Agreement subsequently negotiated between the parties, which expressly carved out "any and all claims or actions arising from the Newman Fee."  (*Id.*).  In addition, in suggesting that Later Agreements absolve it of any obligation to pay that arose pursuant to the earlier agreements,

Private Capital also seems to suggest that a merger clause will eliminate liability incurred pursuant to breaches that occurred prior to the date the Later Agreements became effective.  The Amended Complaint plausibly alleges that "PCG, SFM, and the PCG Assignees have repeatedly breached the Agreements by failing to pay Newman Capital the advisory fees as they came due." (Am. Compl. ¶ 140.)  Private Capital has not cited any case standing for the proposition that a merger clause release claims for earlier material breaches of those superseded agreements. Indeed, if such clauses were intended to eliminate all existing liabilities incurred as a result of previous breaches of previous contracts, they would state so explicitly.  They do not.  Moreover, Private Capital's argument is further belied by the inclusion of a merger clause in the Settlement Agreement itself.  (Doc. 14-10 ¶ 9).

Therefore, because I find that there are material issues of fact that are not resolved by the standard merger clause at issue, which does not, itself, eliminate Private Capital's obligations to pay liabilities already incurred, Private Capital's motion as to the breach of contract claim is DENIED.

### 2.  New Defendants

The New Defendants argue that Plaintiff "fails to allege the existence of a contract between Newman Capital and the Non-SFM Contract Defendants" and "fails to allege a breach of contract by SFM." [7]  (Doc. 27 at 11–12.)  Both assertions are incorrect.  To survive a motion to dismiss, a breach of contract claim must allege "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."  *Innovative Biodefense, Inc. v. VSP Techs.,*

---

[7] The New Defendants also repeat Private Capital's arguments that the breach of contract claim fails because (1) the parties entered into the Settlement Agreement, and (2) the earlier agreements were superseded by later agreements. These arguments are unsuccessful as the New Defendants for the same reasons they failed for Private Capital.

*Inc.*, 176 F. Supp. 3d 305 (S.D.N.Y. 2016) (internal quotation marks omitted).  "In general, under New York law, a breach of contract action may only be maintained against a party to the contract."  *Jennings v. Hunt Cos., Inc.*, 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019) (internal quotation marks and alterations omitted).  However, a non-party may be bound by a contract if "the signatory is in fact the alter ego of the party."  *Kitchen Winners NY Inc. v. Rock Fintek LLC*, No. 22-CV-5276 (PAE), 2023 WL 2746031, at *11 (S.D.N.Y. Mar. 31, 2023) (internal quotation marks omitted).

In the Amended Complaint, Plaintiff pleads the existence of contracts, performance by Plaintiff, breach in the form of failure to pay fees associated with the Crestline investments, and resulting damages incurred by Plaintiff.  (Am. Compl. ¶¶ 50, 137–142, 143–144.)  The 2013 NDNCA and 2014 NDNCA were entered into by "Jared L. Lucero of Private Capital Group, Inc. and its affiliates, associates, subsidiaries, employees, officers, directors and assigns."  (Doc. 5-5 at 29, 36.)  The 2017 NDNCA and 2018 NDNCA were entered into by SFM "and its affiliates . . . associates, subsidiaries, employees, officers, directors, and assigns."  (Doc. 5-5 at 43, 58.)  The 2013 AFA was between Plaintiff and Private Capital; the 2014 EA and 2017 EA were between WaveCrest and Private Capital; and the 2018 AFA was between Plaintiff and SFM.  (*Id.* at 32, 39, 46, 61.)  Not only do certain of the agreements expressly bind Private Capital's affiliates, subsidiaries, and assigns, but as explained *supra,* Plaintiff has sufficiently pled that the PCG Assignees are alter egos of Private Capital.  These allegations are sufficient to support a claim that the PCG Assignees and SFM are bound by the agreements.  Accordingly, the New Defendants' motion to dismiss the breach of contract claim is DENIED.

### F.  *Intentional Interference with Contractual Relations*

Plaintiff's second cause of action is against the Known Affiliates and Individual

Defendants for intentional interference with contractual relations. (Am. Comp. ¶¶ 145–153.) The New Defendants argue that this cause of action should be dismissed for failure to state a claim. (Doc. 27 at 13.) I agree.

In order to state a claim for intentional interference with contract under New York law, which the parties agree governs, (*see* Doc. 27 at 13; Doc. 37 at 20), a plaintiff must allege the following elements: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (internal quotation marks omitted).

Plaintiff argues that the Individual Defendants "used the Known Affiliates to enter into separate agreements with Crestline for their own benefit for purposes of circumventing the Agreements [between Newman Capital and PCG] . . . thereby damaging Plaintiff." (Doc. 37 at 20; Am. Compl. ¶ 145–153.) Plaintiff further alleges that "PCG, SFM, and the PCG Assignees have used the interference by [the Individual Defendants] and the Known Affiliates as the basis to avoid payment to Newman Capital of its contractually agreed to Advisory Fees." (Am. Compl. ¶ 151.)

Plaintiff's intentional interference claim fails for several reasons. First, as explained *supra*, Plaintiff has plausibly alleged a breach of contract claim. However, "[w]here the plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort, the plaintiff must prove that the defendant breached a duty independent of its duties under the contract; otherwise plaintiff is limited to an action in contract." *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003); *see also Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*, 17-CV-241

25

(ER), 2018 WL 1605985, at *8 (S.D.N.Y. Mar. 29, 2018).  Plaintiff does not allege that the Individual Defendants or PCG Assignees breached any duty independent of their duties under the contracts.  Similarly, Plaintiff misunderstands the relationship between the third-party and the breach.  The only alleged breach is Private Capitals's alleged failure to pay its contractual obligations to Plaintiff.  Therefore, Plaintiff fails to allege that the Individual Defendants or PCG Assignees procured a third-party's breach to any contract to which Plaintiff itself was a party. *See Long v. De Feis O'Connell & Rose, P.C.*, No. 20-CV-2530 (AT), 2021 WL 257135, at *4 (S.D.N.Y. Jan. 26, 2021) (dismissing a tortious interference with contract claim because the plaintiff failed to allege a third party's breach).

Similarly, although the remaining Known Affiliates[8] are not alleged to have been parties to the agreements, Plaintiff does not offer any specific allegations related to the knowledge or intent of these entities besides conclusory allegations that these entities have "full knowledge" of the contracts at issue and acted "for [the] purpose of circumventing the Agreements."  (Am. Compl. ¶¶ 148, 150.)  Such bare allegations are insufficient to sustain a claim.  Therefore, the intentional interference claim against them must fail.

Accordingly, the New Defendants' motion to dismiss the intentional interference with contractual relations claim is GRANTED.

## G. *Unjust Enrichment*

Plaintiff raises a claim for unjust enrichment against the Individual Defendants and the Known Affiliates.  (Am. Comp. ¶¶ 154–162.)  The New Defendants argue that this claim should be dismissed because (1) Plaintiff "fails to allege facts that each of the Individual Defendants

---

[8]  The remaining Known Affiliates are Reef Investment Management, Canyon Accounting LLC, PCG Select Series I LLC, PCG Select Series Offshore I LP, SFM Credit Fund Offshore I LP, SFM Secured Credit II LLC, and RIM Secured Credit Income Fund III.

received at the expense of New Capital a specific, identified benefit," (2) the Amended

Complaint "fails to allege any relationship between Newman Capital and [Defendants] resulting

in a direct benefit conferred," and (3) unjust enrichment cannot be pled in the alternative to

breach of contract if the validity of the contract is not in dispute.  (Doc. 27 at 16–18.)

The New Defendants are correct that, under the facts alleged, Plaintiff has not pled unjust

enrichment.  Plaintiff does not dispute that there is a valid, enforceable contract governing the

parties' conduct.  Therefore, Plaintiff cannot plead unjust enrichment in the alternative to its

breach of contract cause of action.  *See Beth Isr. Med. Ctr. v. Horizon Blue Cross and Blue*

*Shield of N.J., Inc.*, 448 F.3d 573, 586–87 (2d Cir. 2006) (explaining that a Plaintiff cannot plead

an unjust enrichment claim in the alternative if there is a "valid and enforceable contract

governing [the] subject matter"); *King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, No. 09-

CV-3980, 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009) ("Unjust enrichment may be [pled]

in the alternative where the plaintiff challenges the validity of the contract; it may not be [pled]

in the alternative alongside a claim that the defendant breached an enforceable contract."), *aff'd*,

396 F. App'x 736 (2d Cir. 2010).  Accordingly, the New Defendants' motion to dismiss the

unjust enrichment cause of action is GRANTED.

### H. *Fraudulent Conveyance*

Plaintiff's final claim is that all Defendants are liable for fraudulent conveyance.  (Am.

Comp. ¶¶ 163–169.)  Defendants argue that Plaintiff's fraudulent transfer claim is barred by the

statute of limitations.  I agree.  Under the Utah Uniform Fraudulent Transfer Act ("UUFTA"),[9] a

claim for constructive fraudulent conveyance must be brought "within four years after the

---

[9] The parties do not dispute the application of Utah law to Plaintiff's fraudulent conveyance claim.  (Doc. 13 at 15;
Doc. 29 at 16.)

transfer was made or the obligation was incurred."  Utah Code § 25-6-305.  A claim for

intentional fraudulent transfer must be brought within the same amount of time, or "within one

year after the transfer or obligation was or could reasonably have been discovered by the

claimant."  *Id.*  Plaintiff did not bring the present fraudulent transfer claim until they filed their

Amended Complaint in January 2022, more than six years after the alleged fraudulent transfers.

(*See* Am. Compl. ¶¶ 91–98.)

Plaintiff claims that the statute of limitations does not apply "under the discovery rule and

the relation back doctrine."  (Doc. 37 at 29.)  The discovery rule requires a Plaintiff to make "a

prima facie showing of fraudulent concealment and then demonstrating that given the

defendant's actions, a reasonable plaintiff would not have discovered the claim earlier."

*Berenda v. Langford*, 914 P.2d 45, 51 (Utah 1996).  This "inquiry requires balancing the

reasonableness of the plaintiff in pursuing its claim against the defendant's affirmative actions to

conceal the plaintiff's cause of action."  *Id.* at 51 n.2.  The Amended Complaint does not contain

sufficient details to toll the statute of limitations because Plaintiff fails to plead how Defendants

concealed the transfers, when Plaintiff came to learn of the transfers, or how Plaintiff came to

learn of the transfers.  Accordingly, Plaintiff's fraudulent transfer claim is dismissed without

prejudice with leave to file a second amended complaint.

## V.    Conclusion

For the reasons stated above, Defendants' motions to dismiss are GRANTED in part and

DENIED in part.

Because personal jurisdiction over the Individual Defendants is proper pursuant to New

York's Long Arm Statute, SFM consented to personal jurisdiction in the 2018 AFA, and

Plaintiff's allegations sufficiently plead that the Known Affiliates (other than PCG Select Series

II LLC and PCG Select Series Secured LLC) are alter egos of Private Capital and the Individual Defendants, the New Defendants' motion to dismiss for lack of personal jurisdiction as to those defendants is DENIED.  Because Plaintiff does not provide sufficient reason to pierce the corporate veils of PCG Select Series II LLC, PCG Select Series Secured LLC, or the Nominal Defendants, the New Defendants' motion to dismiss for lack of personal jurisdiction as to those defendants is GRANTED.  Accordingly, Defendants PCG Select Series II LLC, PCG Select Series Secured LLC, PCG Credit Partners LLC, PCG Holdings LLC, 160 W Canyon Crest Road LLC, 1705 Viewpoint LLC, Outlaw Country Holding LLC, Iron Fox Ballard LLC, and Brookside Prairie View LLC are hereby DISMISSED as defendants.

Because the Amended Complaint contains sufficient factual allegations to plausibly allege Plaintiff's claims for breach of contract, Defendants' motions to dismiss as to this claim are DENIED.  However, because the Amended Complaint does not sufficiently plead Plaintiff's claim for unjust enrichment or intentional interference with contractual relationships, and because Plaintiff's claim for fraudulent conveyance is untimely, these claims are dismissed without prejudice with leave to file a Second Amended Complaint.[10]

Additionally, because Plaintiff's sole remaining cause of action for breach of contract is not alleged against the Individual Defendants—Lucero and Burke—or against the non-PCG Assignees—Reef Investment Management LLC, Canyon Accounting LLC, PCG Select Series I

---

[10] In granting leave to amend, I make no finding concerning whether or not the deficiencies in the Amended Complaint can be cured.

LLC, PCG Select Series Offshore I LP, SFM Credit Fund Offshore I LP, SFM Secured Credit II

LLC, and RIM Secured Credit Income Fund III—these Defendants are also DISMISSED.

SO ORDERED.

Dated: May 10, 2024
       New York, New York

Vernon S. Broderick
United States District Judge